UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| James Lowell and Linda Lowell,<br><br>Plaintiffs<br><br>v.<br><br>United States of America,<br><br>Defendant | CIVIL ACTION NO:<br><br><br>**VERIFIED COMPLAINT<br>AND JURY DEMAND** |

### COMPLAINT FOR DAMAGES UNDER THE FEDERAL TORT CLAIMS ACT

Plaintiffs James Lowell and Linda Lowell, by and through their attorney, now come before this Court and complain of the United States Government as follows:

### PARTIES

1. Plaintiff, James Lowell ("Mr. Lowell"), resides at 2 Pecousic Drive, East Longmeadow, Hampden County, Massachusetts.

2. Plaintiff, Linda Lowell ("Mrs. Lowell"), resides at 2 Pecousic Drive, East Longmeadow, Hampden County, Massachusetts.

3. At all times relevant, the defendant, the United States of America ("U.S."), acted through its agency, the United States Postal Service.

### JURISDICTION AND VENUE

4. The claims herein are brought against the U.S. pursuant to 28 U.S.C. § 2671, *et seq.*, commonly referred to as the "Federal Tort Claims Act" or the "FTCA". Liability of the

1

United States is predicated specifically on 28 U.S.C. §§ 1346(b)(1) and 2674 because the personal injuries and resulting damages that form the basis of this complaint were proximately caused by the negligence, wrongful acts and/or omissions of employees of the United States of America through its agency, the United States Postal Service ("USPS"). These employees were acting within the course and scope of their office or employment, under circumstances where the United States of America, if a private person, would be liable to the Plaintiff in the same manner and to the same extent as a private individual under the laws of the Commonwealth of Massachusetts.

5. The events forming the basis of this action occurred on April 12, 2019, at the Marblehead Post Office in Marblehead, Massachusetts. Pursuant to 28 U.S.C. § 2675 and less than two years from the date that the claims alleged in this action arose, the plaintiffs' claims were presented to the appropriate agency of Defendant, the United States of America, namely the USPS on March 26, 2021. Copies of the plaintiffs' claims are attached hereto as Exhibit 1 (Mr. Lowell's claim) and Exhibit 2 (Mrs. Lowell's claim) and are incorporated herein for reference.

6. On April 20, 2021, a letter was received from Attorney Megan Shaver from the USPS National Tort Center in St. Louis, Missouri, confirming receipt of the plaintiffs claims on March 26, 2021, and advising that the "Postal Service has six months from March 26, 2021 in which to adjudicate these claims." A copy of Attorney Shaver's letter is attached hereto as Exhibit 3 and incorporated herein for reference.

7. As of September 26, 2021, six months from the date the plaintiffs' claims were filed, the USPS had neither denied the plaintiffs' claims in writing nor had it made a final disposition of their claims.

8. Venue is proper in that all, or a substantial part of the acts and omissions forming the basis of these claims occurred in the District of Massachusetts and arose from the negligence of the United States Postal Service.

### Events Forming the Basis of the Claims

9. Mr. Lowell is employed as an industrial hygiene technician by ATC Group Services LLC ("ATC Group"), an environmental consulting and engineering firm, and is based out of ATC Group's office in West Springfield, Massachusetts.

10. On the morning of April 19, 2019, Mr. Lowell arrived at the United States Post Office in Marblehead, Massachusetts, around 9:00 a.m. for the purpose of inspecting the roof for asbestos, along with a roofing contractor, William Coughlin ("Mr. Coughlin").

11. There is a driveway surrounding the Marblehead Post Office building and there are mailboxes along the driveway so that customers may drop off mail by driving along the driveway.

12. Mr. Lowell arrived with a ladder and initially planned to access the roof using the ladder positioned along the exterior of the building.

13. A USPS Customer Service Supervisor at the Marblehead Post Office, believed to be David Yench, directed Mr. Lowell and Mr. Coughlin that they should instead access the roof through a custodial closet located inside the building because Mr. Lowell's ladder would have partially blocked the driveway and access to the mailboxes.

14. Mr. Yench then escorted them to that custodial closet inside the building and pointed out a ladder affixed to the wall by which they could gain access to the roof.

15. Accessing the roof required climbing the fixed ladder located in the custodial closet, up through the unlit attic space of the building, to reach a roof hatch.

16. Pursuant to ATC Group employee safety rules and OSHA recommendations, Mr. Lowell climbed up the ladder maintaining three-point contact (two hands and a foot, or two feet and a hand) and planned to use a hand line and bucket to raise the tools he required for the inspection.
17. Upon reaching the lower attic space, Mr. Lowell saw a piece of wood flooring placed adjacent to the fixed ladder and positioned across the top of the concrete masonry unit (commonly called "cinder block") structural walls in the manner of a landing.
18. There was no other flooring upon which to stand in that part of the attic.
19. Mr. Lowell stood on the board and prepared to use a bucket and rope to lift some tools that he would need for the roof inspection to that part of the attic, before proceeding up to the higher level of the attic space.
20. Unbeknownst to Mr. Lowell, the wood flooring board was not secured in any way to the concrete masonry unit structural walls.
21. At no point did Mr. Yench, or any other USPS employee, warn Mr. Lowell against standing on the board nor did any USPS employee inform Mr. Lowell that the board was unsecured.
22. As he began to lift the bucket, the board upon which he stood shifted, and Mr. Lowell fell backwards.
23. Because there were no railings around this makeshift landing, Mr. Lowell crashed through the ceiling of the ground floor, fell approximately ten to fifteen feet, and landed on the hard tile floor of the women's restroom of the floor below.
24. USPS employee Steven Roy found Mr. Lowell on the floor of the restroom.

25. Mr. Yench called 911 to summon emergency medical services and Mr. Lowell was transported to North Shore Medical Center/Salem Campus Emergency Department ("NSMC") where he was admitted due to his extensive injuries resulting from his fall at the Marblehead Post Office.

26. Mr. Lowell suffered several significant and painful injuries as a result of his fall through the ceiling at the Marblehead Post Office, including extensive fractures through his left first through left twelfth ribs (many of which were shattered, severed, and displaced), a serious left clavicle fracture, and a left-sided hemopneumothorax (a serious condition often caused by trauma that is a combination of a collapsed lung and blood accumulating in the space between the lung and the chest cavity).

27. Mr. Lowell spent seven days in the hospital located over 100 miles from his home in western Massachusetts before he was stable enough to be discharged on April 18, 2021.

28. Within days of his discharge, Mr. Lowell required orthopedic surgery called open reduction internal fixation ("ORIF") to repair and stabilize his fractured left clavicle. The ORIF surgery on Mr. Lowell involved the placement of metal plates and several screws to secure his fractured left clavicle.

29. Mr. Lowell required numerous follow-up medical appointments with his primary care provider, his orthopedic surgeon, and a thoracic surgery specialist, as well as months of twice-weekly physical therapy sessions as he regained his strength and mobility.

30. Mr. Lowell endured several months of severely restricted activity as his body healed from the traumatic injuries he sustained at the Marblehead Post Office.

31. Coughing or sneezing was extremely painful due to his multiple broken ribs, and he was constantly in pain and was only able to sleep at night if he was propped upright with a

several pillows, which required him to sleep in a separate room from his wife for several weeks.

32. Mr. Lowell was unable to do basic personal care activities such as showering or dressing by himself for several weeks following his discharge from NSMC and his subsequent orthopedic surgery, rendering him almost completely dependent on his wife during this time.

33. Mr. Lowell required prescription pain medication to manage his pain for several months.

34. Due to his injuries, Mr. Lowell was unable to work from April 12th until the middle of August, 2019.

35. Mr. Lowell returned to work at ATC Group with light-duty restrictions in mid-August of 2019, but regularly felt fatigue and tightness in his left shoulder by the end of the day.

36. The weakness and instability he felt in his left shoulder continued to interfere with his work duties, as lifting and being able to control ladders are essential, regular tasks in his occupation as an industrial hygiene technician.

37. Five months after the accident and at Mr. Lowell's request, despite the continuing pain and discomfort he felt with daily activities, Mr. Lowell's orthopedic surgeon lifted the light-duty restriction and cleared him to return to work full-time at his regular duties at the end of September 2019.

38. In January 2020, Mr. Lowell's thoracic specialist nurse practitioner advised him that other than using medications to help to control and provide some relief from the pain, there was nothing else to be done from a medical standpoint, and that essentially Mr. Lowell had to bear the pain until such time as his ribs were fully healed, a process that could take up to a year or never happen at all.

39. In January 2021, Mr. Lowell's orthopedic surgeon conducted a Permanent Partial Impairment ("PPI") assessment of Mr. Lowell's injuries and concluded that Mr. Lowell has a 3% upper left extremity permanent partial impairment related to his left clavicle injury, which converts to a 2% whole person permanent partial impairment.

40. Over two years from the date of the accident, Mr. Lowell continues to have numbness in area adjacent to the incision from his shoulder surgery and to require over-the-counter medications such as Lidoderm patches and Aleve to control the pain in his shoulder and ribs.

41. Mr. Lowell has been told that he may never fully be free of the pain from his injuries.

42. Prior to the accident, Mr. Lowell enjoyed good health and an active life, including regular walks with his wife, snow skiing, maintaining his home and yard, taking his wheelchair-bound disabled adult step-sons on outings from their residential facility, and playing with his young grandchildren.

43. Since the accident, Mr. Lowell has experienced a lower endurance and has difficulty doing hard physical work or exercise on back-to-back days and has had to modify his work and recreational activities to accommodate his limitations due to the continued pain in his shoulder, back, and ribs.

44. Since the accident, Mr. Lowell has been unable to ski because of the pain he continues to suffer and his concern about what could happen were he to fall and he is likewise hesitant to engage in most physical recreational activities because he knows that he will experience pain and require pain medications within a few hours of any physical exertion.

45. The accident at the Marblehead Post Office impacted Mr. Lowell's income and ability to earn overtime and accrue vacation days, which is able to use to lower the cost of health insurance for himself and his wife.

46. From the date of his injury on April 12th until he was able to return to his full-time regular duties at ATC Group at the end of September 2019, Mr. Lowell missed eight pay periods, 640 hours of regular hours, 36.96 hours of accrued Paid Time Off, and the opportunity to work hundreds of overtime hours. Comparatively, in the same time frame between April and August of 2018, Mr. Lowell worked 310 hours of overtime.

47. The accident at the Marblehead Post Office and Mr. Lowell's traumatic injuries and subsequent surgery resulting therefrom had a significant impact on Mrs. Lowell's life as she cared for her husband while he recovered over the course of several months.

48. Mrs. Lowell served as her husband's driver and primary caregiver during the many weeks when he was unable to do essential personal tasks without assistance, such as showering and dressing himself.

49. During the long months of recovery following the accident, Mr. Lowell was unable to participate fully in the activities he previously enjoyed and was unable to contribute to household maintenance and tasks, all of which placed a considerable burden on Mrs. Lowell, who had to either take on the additional tasks herself, or in some cases, they had to pay a third-party to complete the job, such as hiring a lawn care service.

50. For several months, Mrs. Lowell was unable to even sleep in the same bed as her husband because Mr. Lowell could only sleep propped up in a chair with several pillows due to the pain in his shoulder and ribs.

51. Mr. and Mrs. Lowell's ability to be physically intimate has also been negatively affected by Mr. Lowell's injuries, which made any physical intimacy impossible for an extended time during his recovery and continue to interfere to this day due to the pain and discomfort Mr. Lowell suffers with physical activity of any sort.

52. Mr. and Mrs. Lowell have two adult children: their daughter, Catherine Lowell Cairns, and Mr. Lowell's adult stepson, David Gonyea, who is confined to a wheelchair due to significant physical disabilities and resides full-time at Western Mass Hospital in Westfield, Massachusetts.

53. Until his death in August of 2021, Mr. and Mrs. Lowell's adult son and David's twin brother, Matthew Gonyea, also resided at Western Mass Hospital and was also confined to a wheelchair due to significant physical disabilities.

54. Mr. and Mrs. Lowell have devoted significant time caring for and visiting their sons and own a customized van for the sole purpose of taking their sons on outings and trips home, both of which they did regularly before Mr. Lowell's accident.

55. Due to their significant disabilities, Mrs. Lowell was unable to take David and Matthew on outings without assistance. During Mr. Lowell's hospitalization and for approximately four months while he recovered, Mr. Lowell was unable to help Mrs. Lowell take David and Matthew on their regular weekly outings.

56. Due to his injuries, Mr. Lowell was unable to even visit David and Matthew in-person for approximately three months.

57. To this day, Mr. Lowell's ability to maneuver David's wheelchair is impeded due to the pain in his left shoulder and ribs.

58. Mr. and Mrs. Lowell have two young grandsons who they visit and babysit regularly, but since the accident, Mr. Lowell has not been able to play with and interact with his grandsons like he previously did, as he is unable to pick them up without experiencing pain. Mr. Lowell's hospitalization, surgery, and extended period of rehabilitation interfered with his relationships with his wife, children, and grandchildren, and his permanent partial impairment continues to negatively impact those relationships.

59. The negligent conduct described herein was the proximate cause of Mr. Lowell's damages and physical injuries, including twelve fractured ribs, a hemopneumothorax, and a severely displaced fractured clavicle that required orthopedic surgery, extreme physical pain limiting his range of motion and ability to work or enjoy leisurely pursuits, physical pain, and emotional distress and other injuries.

## FIRST CLAIM FOR RELIEF
### NEGLIGENCE – JAMES LOWELL VS. USPS

60. Plaintiff, James Lowell, repeats and realleges the allegations contained in paragraphs 1 through 59 above.

61. Defendant USPS had a duty to maintain its premises at the Marblehead Post Office in such a manner as to avoid causing injury to another person. USPS failed to do so as if fully set forth herein.

62. As set forth above, the Defendant, USPS, was negligent in directing Mr. Lowell to use an unsafe course to reach the roof access, including the interior roof access ladder affixed to the wall in a custodial closet with no safe landing at the ceiling hatch level, at the Marblehead Post Office and failing to warn him of the improper placement of an unsecured board that Mr. Lowell reasonably stood upon just prior to his fall.

63. The placement of an unsecured board directly adjacent to the ladder in the unlit attic created an unsafe condition and an unreasonable risk of harm to Mr. Lowell as an invitee to the premises.

64. USPS should have installed a reasonably safe landing and removed the unsafe board prior to Mr. Lowell entering the attic and have warned him that the board directly adjacent to the interior fixed ladder in the unlit attic was not secured before instructing him to access the roof using said ladder.

65. The USPS's negligent placement of the board and failure to exercise reasonable care to protect Mr. Lowell from the unsafe condition on the USPS's premises created a hazard that led to Mr. Lowell's fall through the ceiling and subsequent injuries.

66. But for the negligence of the USPS, Mr. Lowell would not have suffered injuries.

67. As a direct and proximate result of the USPS's negligence in failing to exercise reasonable care to protect Mr. Lowell from the unsafe condition on USPS premises, Mr. Lowell suffered injuries and damages, including but not limited to extreme pain and suffering, orthopedic surgery, numerous doctor visits and extended in-patient hospital stays, examinations and treatments, months of physical therapy, financial loss, emotional distress, and other damages which have impacted his comfort and enjoyment of life, his relationships, and his employment.

WHEREFORE, Mr. Lowell demands judgment against the USPS in an amount that this Court shall deem just and proper, together with interest and costs.

## SECOND CLAIM FOR RELIEF
### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS – JAMES LOWELL VS. USPS

68. Plaintiff James Lowell repeats and realleges the allegations contained in paragraphs 1 through 67 above as if fully set forth herein.

69. As a result of the substantial physical injuries suffered by Mr. Lowell as a result of the Defendant's conduct, it was reasonably foreseeable that Mr. Lowell would suffer emotional distress.

70. Mr. Lowell experienced severe emotional distress as a result of the defendants' negligence and recklessness, including but not limited to USPS's directing Mr. Lowell to access the roof of the Marblehead Post Office through the interior attic access when an unsafe condition existed in the form of an unsecured board placed directly adjacent to the ladder and failing to exercise reasonable care to remove the board in the attic or warning Mr. Lowell of the unsafe condition, resulting in traumatic injury, pain, suffering, orthopedic surgery, physical therapy, lost time from work and lost income, and other severe impacts on Mr. Lowell's life.

71. As a result of the defendants' negligence and other wrongful conduct, the plaintiff has suffered severe emotional distress, including but not limited to depression, insomnia, feelings of despair, and difficulty working and functioning.

WHEREFORE, the Plaintiff, James Lowell, demands judgment and damages against the Defendant in an amount that this Court shall deem just and proper, together with interest and costs.

### THIRD CLAIM FOR RELIEF
### LOSS OF CONSORTIUM AND SOCIETY – LINDA LOWELL VS. USPS

72. Plaintiff, Linda Lowell, repeats and realleges the allegations contained in Paragraphs 1 through 71 above as if fully set forth herein.

73. Due to Mr. Lowell's injuries that were the direct result of the USPS's negligence, Mrs. Lowell served as Mr. Lowell's driver and primary caregiver during the many months of his recovery, assisting him with all manner of personal care.

74. During Mr. Lowell's recovery, Mrs. Lowell was unable to be intimate with or even sleep in the same bed as her husband of over thirty-five years.

75. During Mr. Lowell's recovery, Mrs. Lowell ability to take her disabled adult sons on their regular outings was restricted because Mr. Lowell was unable to help her maneuver David and Matthew's wheelchairs into and out of their van.

76. In light of Mr. Lowell's permanent partial disability and his physician's conclusion that he has reached maximum medical improvement and will continue to experience pain as a result of his injuries for the rest of this life, Mrs. Lowell will be unable to engage in many activities she enjoyed with her husband prior to his accident and the life they looked forward to as they age has been irreparably impacted.

77. As a result of the negligence of the Defendant, the Plaintiff, Ms. Lowell, suffered a loss of society, services, and companionship with her husband.

WHEREFORE, the Plaintiff, Linda Lowell, demands judgment and damages against the Defendant in an amount that this Court shall deem just and proper, together with interest and costs.

### FOURTH CLAIM FOR RELIEF
### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS – LINDA LOWELL VS. USPS

78. Plaintiff Linda Lowell repeats and realleges the allegations contained in paragraphs 1 through 77 above as if fully set forth herein.

79. As a result of the substantial physical injuries suffered by Mr. Lowell as a result of the Defendant's conduct, it was reasonably foreseeable that Mrs. Lowell would suffer emotional distress.

80. As a result of the Defendant's negligence and other wrongful conduct, Mrs. Lowell has suffered severe emotional distress, including but not limited to anxiety, depression, and feelings of despair.

WHEREFORE, the Plaintiff, Linda Lowell, demands judgment and damages against the Defendant in an amount that this Court shall deem just and proper, together with interest and costs.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs pray that the Court enter judgment in Plaintiffs' favor against the Defendant United States of America on all counts and provide the following relief:

a. monetary damages in an amount to be proved at trial;

b. damages for pain and suffering, injuries and other harms;

c. attorneys' fees, expenses, expert costs, costs, and interest; and

## JURY DEMAND

COMES NOW the Plaintiffs, James and Linda Lowell, by and through their attorneys, Egan Flanagan and Cohen, P.C., and demands a trial by jury.

> FOR THE PLAINTIFFS,
> JAMES AND LINDA LOWELL,
> BY THEIR ATTORNEY,
>
> /s/ Thomas E. Day
> Thomas E. Day, Esq. BBO#655409
> Egan, Flanagan & Cohen, P.C.
> 67 Market Street – P.O. Box 9035
> Springfield, MA 01102-9035
> Tel: (413) 737-0260; Fax: (413) 737-0121
> Email: tday@efclaw.com

## VERIFICATION

I declare and affirm, under the pains and penalties of perjury, that to the best of my knowledge the allegations set forth above are true and correct.

Dated: 2/11/2022

> /s/ Thomas E. Day
> Thomas E. Day

17520-190407\420469